NOT FOR PUBLICATION

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

FILED



JUN 10 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DANIEL B. MARTIN,<br><br>       Plaintiff - Appellant,<br><br>  v.<br><br>INTERNATIONAL ORGANIZATION OF MASTERS, MATES & PILOTS; MATSON NAVIGATION COMPANY, INC.,<br><br>       Defendants - Appellees. | No. 25-6043<br><br>D.C. No.<br>3:25-cv-04382-RFL<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Rita F. Lin, District Judge, Presiding

Submitted June 10, 2026[**]
San Francisco, California

Before: GOULD, NGUYEN, and VANDYKE, Circuit Judges.

Daniel Martin appeals the district court's order denying his motion to remand

to state court his putative state-law assault claim against International Organization

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

of Masters, Mates & Pilots ("the Union"). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

We review de novo "issues of subject matter jurisdiction and denials of motions to remand removed cases." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1315 (9th Cir. 1998). "[W]e have an independent obligation to ensure that both the district court and this court have subject-matter jurisdiction." *Moe v. GEICO Indem. Co.*, 73 F.4th 757, 761 (9th Cir. 2023).

Federal district courts have removal jurisdiction over cases over which federal district courts "have original jurisdiction." 28 U.S.C. § 1441. In general, "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). "One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id.* at 63–64. Our precedent holds that "complete preemption applies when Congress '(1) intended to displace a state-law cause of action, and (2) provided a substitute cause of action.'" *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 748 (9th Cir. 2022) (quoting *City of Oakland v. BP PLC*, 969 F.3d 895, 906 (9th Cir. 2020)).

1. Through section 9(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 159(a), Congress intended to displace state-law causes of action alleging

breaches of a labor union's representative duties owed to its members. Claims under section 301 of the LMRA are completely preempted because any claim "for violation of contracts between an employer and a labor organization" is "purely a creature of federal law." *Franchise Tax Bd. of Cal. v. Const. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23–24 (1983); *see also Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists and Aerospace Workers*, 390 U.S. 557, 560 (1968). The Supreme Court has held that breach-of-duty-of-fair-representation claims are similarly defined by federal law. *See Vaca v. Sipes*, 386 U.S. 171, 188–89, 193 (1967). And it has observed that rules for duty-of-fair-representation claims should be influenced by the policy goals of federal labor law. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 161 (noting that "state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law"). Additionally, considering the close relationship between duty-of-fair-representation claims and claims for breach of a collective bargaining agreement under section 301, especially in the context of hybrid claims, it makes sense that Congress would treat them identically for purposes of federal jurisdiction. *See id.* at 164–65.

2. Through the duty of fair representation, Congress "provided a substitute cause of action" for preempted state-law claims alleging breaches of labor unions' representative duties. *Cnty. of San Mateo*, 32 F.4th at 748 (citation omitted). Here, Martin alleged that the Union deliberately "conspired" with Matson Navigation

3                                                                                                      25-6043

Company, Inc. ("Matson") "to coerce … Martin to violate his rights to bodily integrity" by instituting the vaccination requirement. If this allegation is true, then Martin would likely have a cause of action for breach of the duty of fair representation. *See Beck v. United Food & Com. Workers Union, Loc. 99*, 506 F.3d 874, 879 (9th Cir. 2007) ("A union breaches its duty of fair representation when its 'conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.'" (quoting *Vaca*, 386 U.S. at 190)). And courts have power to remedy such breaches. *See Vaca*, 386 U.S. at 196. Thus, Congress has supplied Martin with a "substitute cause of action," and both elements of the *County of San Mateo* test for complete preemption are satisfied. 32 F.4th at 748 (citation omitted); *cf. City of Oakland*, 969 F.3d at 908 (finding no substitute cause of action where there was no "federal claim or cause of action" for the state-law claim and where the federal statute did not allow for the "compensatory damages" allowed under state law).

3. The district court did not err in determining that Martin's state-law claim against the Union, as alleged in both the state-court complaint and the amended complaint, was preempted by the duty of fair representation. "The federal statutory duty which unions owe their members to represent them fairly … displaces state law that would impose duties upon unions by virtue of their status as the workers' exclusive collective bargaining representative." *Adkins v. Mireles*, 526 F.3d 531,

539 (9th Cir. 2008). "To bring a successful state law action, aggrieved workers must make a showing of additional duties, if they exist, beyond the normal incidents of the union-employee relationship." *Id.* (citing *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 374 (1990)). Here, the gravamen of Martin's claim against the Union is that the Union "exerted coercive pressure upon … Martin to accept unwanted medical treatment by threatening his livelihood." The Union was in a *position* to exert this pressure only because Martin was a Union member and the Union, on behalf of its membership, negotiated with Matson to "institute[] a [r]equirement … that no [m]ember could be dispatched to a Matson vessel" without being vaccinated. Like the plaintiffs in *Adkins*, who also sought to level an intentional-tort claim against their union, Martin takes issue with how the Union "carrie[d] out its representational functions" and seeks redress through a state-law intentional-tort claim. *Id.* at 541–42.

**AFFIRMED.**